**In the Matter of Anthony DeANGELIS, Bankrupt.**

**Walter D. Van Riper and Van Riper and Belmont, Appellants.**

**No. 15954.**

United States Court of Appeals
Third Circuit.

Argued Jan. 19, 1967.

Decided March 8, 1967.

756

Frederic C. Ritger, Jr., Newark, N. J. (Van Riper & Belmont, Newark, N. J., on the brief), for appellants.

Vincent J. Commisa, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before HASTIE, GANEY and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

We are concerned on this appeal with the issue of priority as between tax liens of the United States and the rights of a pledgee of an indebtedness owed the taxpayer.

Between the years 1954 and 1957 the United States made federal income tax assessments against Anthony DeAngelis totaling over $1,250,000. At various times notices and demands for payment were made. In 1957 the United States filed in the appropriate office of Bronx County, New York notices of tax liens as to the assessed and unpaid amounts. DeAngelis resided in Bronx County during the period when the assessments were made and the notices were filed. Commencing sometime in 1960 DeAngelis terminated his residence in Bronx County and has not resided there since. During February 1963 he resided in New York County, New York. In that month an indebtedness from one Lappana of the State of Florida was created in favor of

DeAngelis. This indebtedness is the subject matter of the present controversy.

In November 1963 DeAngelis, as president of Allied Crude Vegetable Oil Refining Corporation, caused the corporation to file a petition under Chapter XI of the Bankruptcy Act for an arrangement of its creditors. Its filing created turmoil in financial circles. Shortly thereafter DeAngelis retained the Van Riper and Belmont law firm ("Van Riper") of Newark, New Jersey to represent him personally in certain anticipated criminal actions. On December 27, 1963, in order to secure payment of his legal fees, the bankrupt executed a written assignment to Van Riper of "all my right and interest to the indebtedness due and owing to me from" two individuals, one of whom was Lappana.

In January 1964 an involuntary petition in bankruptcy was filed which resulted in the adjudication of DeAngelis as a bankrupt. DeAngelis will be referred to hereafter as the "bankrupt".

Thereafter the trustee in bankruptcy for the bankrupt liquidated the Lappana indebtedness and held the money subject to the conflicting claims of the Director of Internal Revenue and Van Riper.[1] After due proceedings the Referee in Bankruptcy entered an order according priority to the tax liens. On Van Riper's petition for review of that order the District Court affirmed. The present appeal is from that action.

The parties agree that the material facts are not in dispute. Van Riper contends that by the assignment he became a pledgee; that at such time he was without legal notice of the tax liens and thus they are not valid as to his interest in the debt. This poses the issue as to whether the pledgee had legal notice of the tax liens when he accepted the pledge. In resolving this matter we shall assume that the assignment of the debt constituted a pledge.

We turn first to the governing statutes. Under §§ 6321 and 6322 of 26 U.S.C.A., unless another date is fixed by law, non-payment of taxes after demand creates a lien commencing at the assessment date. And this lien applies to the taxpayer's property acquired after the lien is created. Glass City Bank v. United States, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945).

There is no doubt that when the debt arose in the bankrupt's favor it became subject to the tax liens. But under § 6323 of 26 U.S.C.A.:

"the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate."

"(1) Under state or territorial laws. —In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice; * * *"[2]

The notices of liens were filed under the New York statute. Since the question as to whether the required tax lien notices were filed in accordance with the New York statute is controlled by New York law, Bankers Trust Co. v. Eq. Life Ass. Soc., 22 A.D.2d 579, 257 N.Y. S.2d 502 (App.Div.1965), we turn first to the pertinent portion of the New York statute. Section 240, paragraph 2 of the Lien Law, McKinney's Consol.Laws, c. 33, provides in pertinent part:

"Notices of liens upon personal property for taxes payable to the United States of America and certificates releasing or discharging such lien shall be filed in the county within the city of New York or in the town or city where the owner, if a resident of the state, resides at the time the lien arises, and if not a resident, in the

---

1. The parties agree that no question of "preference" under the Bankruptcy Act is before us.

2. Since it is undisputed that New York's lien law is applicable, the alternative provision for filing in the federal district court does not concern us.

county within the city of New York or in the town or city where the property is at such time. If there is more than one owner, such notices or certificates shall be filed in each county within the city of New York or town or city within the state where each owner resides at the time the lien arises, and if any such owner be a nonresident of the state at such time, then also in the county within the city of New York or in the town or city in which the property is at such time.

\* \* \* \* \* \*

"If the property is in the city of New York at the time the lien arises, the notice or certificate shall be filed in the county within the city of New York or in the town or city where the owner, or each of several owners who are residents of the state, resides at the time the lien arises, and also in the county where the property is situated."

The pledgee here claims that his pledge has priority over the tax liens because the notices of liens filed by the United States did not meet the requirements of the New York statute so as to constitute legal notice thereof to him at the time he became pledgee. He points to the fact that at the time the Lappana indebtedness was created the bankrupt resided in a county other than the one in which the notices were recorded. In this circumstance he contends that for the tax liens to have priority the New York statute required that notice be refiled in the county of the bankrupt's then residence.

■ We think the answer is found in the language of the New York statute. It provides that "notices of liens upon personal property \* \* \* shall be filed in the county within the city of New York \* \* \* where the owner, if a resident of the state, resides at the time the lien arises, \* \* \* ". Under 26 U.S.C.A. § 6322 the present liens arose when the assessments were made in the period between 1954 and 1957. Since the bankrupt admittedly resided in Bronx County, New York City during such period the notices filed in Bronx County were clearly effective under the New York statute to give valid notice of the government's liens to subsequent pledgees, etc. of the bankrupt. There is nothing in the statutory language to suggest that the efficacy of the notices was to be limited by any factor of continued residence in the county. And certainly the New York statute embraces after-acquired property. See Mintz v. Fischer, 19 A.D.2d 36, 240 N.Y.S.2d 649 (App.Div.1963); Oxford Distributing Co. v. Famous Roberts, 5 A.D.2d 507, 173 N.Y.S.2d 468; In re Levitt, 7 Misc.2d 628, 169 N.Y.S.2d 407.

■ Nor does the last sentence of Paragraph 2 of § 240 of the New York Lien Law alter our conclusion that this pledgee had legal notice of the tax liens. That sentence applies solely to property which is situated in New York City "at the time the lien arises" and requires, in such a case, as to a resident owner, that the notice be filed in the county of his residence and in the county where the property is situated. That provision has no application to our case because the pledged property here involved, not being in existence, obviously was not situated in New York when the government's liens arose. Thus, the provision is by its language inapplicable to after-acquired property. See Mintz v. Fischer, above.

We fully recognize that the operation of the federal tax liens statute and the state recording statutes creates areas of uncertainty particularly for commercial interests.[3] But some of these problems are inherent in the nature of the problem, particularly where personal property is concerned. Compare Grand Prairie State Bank v. United States, 206 F.2d 217 (5th Cir. 1953).

■ We conclude that the tax liens here involved attached to the Lappana debt when it was created and that the notices thereof filed in Bronx County constituted legal notice to the subsequent pledgee. It follows that the order of the District Court should be affirmed.

3. We do note that both the federal and New York statutes were amended in 1966.