RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0337p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DANIEL J. DESMET, LINDA K. DESMET
(08-1598); MICHAEL V. DOMULEWICZ, MARY
ANN DOMULEWICZ (08-1676),
                *Petitioners-Appellants,*

         *v.*

COMMISSIONER OF INTERNAL REVENUE,
                  *Respondent-Appellee.*

Nos. 08-1598/1676

On Appeal from the United States Tax Court.
Nos. 10436-05; 05-10434.

Argued: March 10, 2009

Decided and Filed: September 17, 2009

Before: CLAY and GIBBONS, Circuit Judges; GREER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** David D. Aughtry, CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS, & MARTIN, Atlanta, Georgia, for Appellants. Michael J. Haungs, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** David D. Aughtry, CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS, & MARTIN, Atlanta, Georgia, for Appellants. Michael J. Haungs, Deborah K. Snyder, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

[*]The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge.   In these consolidated appeals, petitioners-appellants Daniel J. Desmet, Linda K. Desmet, Michael V. Domulewicz, and Mary Ann Domulewicz appeal orders of the United States Tax Court assessing income tax deficiencies of $2,497,934 against the Desmets and $1,250,099 against the Domulewiczes for the 1999 tax year.  The petitioners do not dispute the amounts owed, but they argue that the tax court lacked jurisdiction to determine the deficiencies.  For the reasons that follow, we find that the tax court had jurisdiction over the deficiency proceedings, but we remand for consideration of whether certain components of the deficiencies were time-barred.

I.

Daniel and Michael were business partners in a venture known as CTA Acoustics.   They sold the company in 1999 at a gain to the shareholders of approximately $30 million–including approximately $12 million to Daniel and $6 million to Michael.  To eliminate their tax liability from the sale, the partners engaged in a series of transactions which, taken together, formed an abusive tax shelter known as "Son-of-BOSS."  *See* I.R.S. Notice 2000-44, 2000-2 C.B. 255.  A typical Son-of-BOSS scheme "uses a series of contrived steps in a partnership interest to generate artificial tax losses designed to offset income from other transactions."  *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 446 n.2 (5th Cir. 2008) (internal quotation marks omitted).  "Enormous losses are attractive to a select group of taxpayers–those with enormous gains."  *Kligfeld Holdings v. Commissioner*, 128 T.C. 192, 194 (2007).

In this case, the "contrived steps" may be summarized as follows.  First, in April 1999, Daniel and Michael formed a partnership known as DMD Investment Partners (the "partnership"), with each holding a share of the partnership equivalent to his share in CTA Acoustics.  They then executed a short sale of United States Treasury notes,

generating a loss of approximately $29 million. Next, Daniel and Michael transferred shares of Integral Vision, Inc. ("INVI"), a publicly traded company, to the partnership; the partnership later sold 4,500 of the 7,500 shares it held. Meanwhile, Daniel and Michael also formed an S corporation, DMD Investments, Inc. (the "S corporation"[1]). Each transferred his interest in the partnership to the S corporation. The remaining 3,000 shares of INVI stock held by the partnership were distributed to the S corporation. As a result of these transfers, no shares or assets remained in the partnership, and the partnership therefore dissolved. In December 1999, the S corporation sold the 3,000 shares of INVI stock and claimed a loss of approximately $29 million.

The partnership and the S corporation both filed informational tax returns for 1999. The partnership reported distributions totaling $30.4 million, and the S corporation reported a long-term capital loss of $29.3 million. Daniel and Michael, together with their wives Linda and Mary Ann, respectively, also filed income tax returns for that year. On these returns, the petitioners claimed capital losses passing through from the S corporation, offsetting the capital gains they had realized from the sale of CTA Acoustics. By setting off their capital gains against the reported losses, the petitioners avoided paying income taxes on the gains. The petitioners also claimed ordinary losses passing through from the S corporation of more than $1 million, which represented fees paid to the law firm of Jenkens & Gilchrist for structuring the transactions.

The Internal Revenue Service ("IRS") determined that the partnership had claimed distributions of more than $30 million without reporting related contingent obligations, namely, the obligation to satisfy the short sale of the United States Treasury notes. According to the IRS, the partnership's distributions and obligations cancelled each other out. Consequently, on October 15, 2003, the IRS issued a notice of Final Partnership Administrative Adjustment ("FPAA") to the partnership. The FPAA

---

[1]An S corporation, like a partnership, has "pass-through taxation." This means that the S corporation does not, itself, pay taxes. Rather, the shareholders pay income taxes apportioned on a *pro rata* basis. *See Huffman v. Commissioner*, 518 F.3d 357, 359 n.2 (6th Cir. 2008).

adjusted the basis[2] of the property distributed by the partnership from $30.4 million–as reported on the partnership's 1999 informational return–to zero. Neither Daniel nor Michael contested the FPAA, and it became final. *See* I.R.C. § 6225(a)

On March 10, 2005, the IRS issued notices of income tax deficiency to the petitioners relating to their 1999 returns. The IRS determined that, because the partnership's basis was zero, the petitioners also held a zero basis in their shares of the partnership. Accordingly, the IRS did not permit any of the loss deductions that petitioners claimed on their personal returns. The IRS also disallowed the claimed losses stemming from the Jenkens & Gilchrist fees. All told, the IRS found that the Desmets owed $4,797,388.00 in taxes and $1,891,429.60 in penalties and that the Domulewiczes owed $2,398,491.00 in taxes and $946,750.80 in penalties.

The Desmets and the Domulewiczes separately filed petitions in the United States Tax Court seeking redetermination of the deficiencies on June 7, 2005. The practical effect of the petitions was to prevent the IRS from collecting the taxes and penalties while the deficiency proceedings were pending. However, the petitioners did not dispute the underlying transactions. Rather, they argued that they were not liable because Daniel and Michael engaged in the challenged transactions on the advice of counsel and because Linda and Mary Ann had no knowledge of the transactions.

Almost one year after filing the petitions, the petitioners moved to dismiss the redetermination actions for lack of jurisdiction in the tax court. Before the court ruled on the motions to dismiss, the petitioners filed a second round of dispositive motions identified as "protective" motions for summary judgment. As in their motions to dismiss, the petitioners argued that the tax court lacked jurisdiction to redetermine the tax deficiencies. They also contended that the IRS's disallowance of the claimed losses related to the Jenkens & Gilchrist fees was time-barred. The tax court apparently denied the "protective" motions for summary judgment without opinion on February 15, 2007.

---

[2]The tax concept of "basis" in the partnership-tax context refers to the value of a partner's investment in the partnership. *See Kligfeld Holdings*, 128 T.C. at 196.

On August 8, 2007, the tax court denied the petitioners' previously filed motions to dismiss, finding that it had jurisdiction over the proceedings. The tax court declined to address the petitioners' argument that the disallowance of the Jenkens & Gilchrist fees was time-barred. Following the denial of the motions to dismiss, the parties signed stipulated decisions finding a deficiency of $2,497,934 for the Desmets and $1,250,099 for the Domulewiczes. Both the Desmets and the Domulewiczes timely appealed. We consolidated the cases for review.

## II.

Whether the tax court had jurisdiction is a question of law, which we review *de novo*. *Harbold v. Commissioner*, 51 F.3d 618, 621 (6th Cir. 1995).

A partnership, unlike a corporation, is not a taxable entity. *See* I.R.C. § 701. Rather, its tax obligations pass through to the individual partners, who pay them in the form of income tax on a *pro rata* basis. *See Cent. Valley AG Enters. v. United States*, 531 F.3d 750, 755 (9th Cir. 2008). Before 1982, questions about the tax treatment of partnership income were resolved in separate proceedings against each partner. "This procedure imposed an administrative burden on the IRS, led to duplicative audits and litigation, and created the risk of inconsistent treatment of different partners in the same partnership." *Adams v. Johnson*, 355 F.3d 1179, 1186 (9th Cir. 2004). Under the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, 96 Stat. 324, tax treatment of all "partnership items" is now resolved in a single proceeding against the partnership. *See Katz v. Commissioner*, 335 F.3d 1121, 1123-24 (10th Cir. 2003).

The key change wrought by TEFRA is that tax treatment of all so-called "partnership items" must be determined at the partnership level, not at the partner level. *See* I.R.C. § 6221; *Monti v. United States*, 223 F.3d 76, 78–79 (2d Cir. 2000). Under TEFRA, a partnership must file an annual informational tax return reporting "partnership items" such as income, loss, deductions, and credits. I.R.C. § 6031(a); Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i). Partners must then treat "partnership items" on their own returns consistently with the treatment of those items on the partnership return. I.R.C.

§ 6222(a).  If the IRS disagrees with the reporting of a "partnership item," it must initiate an administrative proceeding against the partnership, not the partners.  I.R.C. § 6223(a)(1).  Conversely, if a partner's tax liability stems from *non*partnership items, the IRS may initiate deficiency proceedings against that partner individually without first proceeding against the partnership.  *See Callaway v. Commissioner*, 231 F.3d 106, 108 (2d Cir. 2000) (finding that TEFRA's centralized proceedings do not apply to treatment of nonpartnership items).

At the conclusion of any proceeding against the partnership, the IRS must issue a notice of Final Partnership Administrative Adjustment ("FPAA") to all partners informing them of any change in tax treatment of partnership items.  I.R.C. § 6223(a)(2).  The partnership may contest the FPAA in the United States Tax Court, an appropriate United States District Court, or the Court of Federal Claims.  I.R.C. § 6226(a); *see, e.g.*, *RJT Invs. X v. Commissioner*, 491 F.3d 732, 735 (8th Cir. 2007) (noting that "TEFRA grants jurisdiction to qualified courts to hear readjustment positions").  If there is no challenge to the FPAA, or once any such challenge is concluded, the IRS may proceed to make computational adjustments to each partner's return.  This is done in one of two ways.  First, the IRS may directly assess the tax against the individual partner by making a computational adjustment—applying the new tax treatment of all partnership items to that partner's return.  *See* I.R.C. § 6230(a)(1).  If the partner disagrees with the application of the FPAA to his own return, he must pay the tax and then challenge the computational adjustment in a refund suit against the government.  I.R.C. § 6230(c).  Second, if the partner's liability relates to "affected items which require partner level determinations," I.R.C. § 6230(a)(2)(A)(i), then the IRS must send a notice of deficiency to that partner, thereby initiating proceedings against him individually, pursuant to the standard deficiency procedures set forth in I.R.C. §§ 6211–16.  *See Callaway*, 231 F.3d at 110.  Deficiency proceedings allow the partner to dispute liability by filing a petition for redetermination before paying the tax.  *See* I.R.C. § 6213(a).

In sum, TEFRA requires the IRS to resolve the tax treatment of all partnership items first.  Only after the IRS has resolved these questions can it proceed to assess

liability derivative of partnership items against individual partners. TEFRA prefers that these computational adjustments be assessed directly to the partner's return, without a second set of proceedings against each partner. However, where the partner's liability relates to affected items requiring partner-level determinations, an additional round of proceedings is permitted. *See* I.R.C. § 6230(a)(2)(A)(i). Finally, as noted, the IRS retains the authority to bring deficiency proceedings against each partner individually where the partner's liability relates to nonpartnership items.

Here, after the FPAA became final as to the partnership, the IRS did not directly assess a tax against the petitioners. Rather, the IRS sent notices of deficiency to them. This procedure allowed the petitioners to dispute their liability before paying the tax, which they have in fact done by filing the instant case. According to the petitioners, the IRS could–and therefore should–have assessed the tax directly based upon the FPAA. Because, they maintain, no partner-level determinations were necessary, the notices of deficiency were improperly sent to them. If the petitioners are correct, then presumably the IRS will not be able to collect from them because the statute of limitations for direct assessment has run. *See* I.R.C. § 6229; *Callaway*, 231 F.3d at 110. According to the Commissioner, the IRS could not have assessed the tax directly and was required to pursue partner-level proceedings because the FPAA did not resolve factual questions about the petitioners' claimed tax credits passing through from the S corporation. The Commissioner therefore argues that the notices of deficiency were properly sent.

Thus, in order to determine whether the Commissioner was permitted to send notices of deficiency and initiate partner-level proceedings, we must decide whether the petitioners' tax liability relates to items that the IRS was required to resolve in the proceeding against the partnership. We find that the IRS was authorized to bring a second round of proceedings against the petitioners because their tax liability could not be directly assessed through a computational adjustment. The FPAA established only that the partnership failed to reduce its basis on account of the contingent obligation to satisfy the short sale but did not address the claimed losses by the S corporation. Significantly, the petitioners' income tax returns claimed pass-through losses

representing their share of the S corporation's long-term capital loss—a loss that was not represented on the FPAA. The petitioners contend that no factual determinations were necessary because the S corporation's loss resulted from the sale of the INVI stock–which, according to the petitioners, is the same property that the partnership reported as distributions. In other words, they claim that the IRS has all of the information about the S corporation that it needs from their related partnership returns. However, the identity of the property cannot be determined from the FPAA. Even if it could be determined, this would not end the inquiry because, as the tax court found, the IRS needed to determine "the portion of the stock actually sold, the holding period for the stock, and the character of any gain or loss." *Domulewicz v. Commissioner*, 129 T.C. 11, 20 (2007). Because these factual questions would otherwise remain unresolved, the IRS was authorized to bring deficiency proceedings against the petitioners.

The language and structure of TEFRA convince us that the IRS was empowered to bring individual proceedings to resolve factual questions regarding the claimed capital losses passing through from the S corporation. However, out of an abundance of caution, we address the petitioners' various arguments to the contrary. First, the petitioners contend that the tax court's later opinion in *Nussdorf v. Commissioner*, 129 T.C. 30 (2007), compels the decision that the sale of INVI stock by the S corporation is a partnership item that does not require partner-level determinations. *Nussdorf* held only that certain stock options *contributed to the partnership* were "partnership items." *Id.* at 41–42 (relying on I.R.C. §§ 723 and 6231(a)(3) to conclude that the basis of stock contributed to a partnership constitutes a partnership item because "in order for a partnership to determine, as required by [§] 723, its basis in the property that a partner contributed to it, the partnership is required to determine the basis of such partner in such property"). *Nussdorf* did not address whether stock *sold by an S corporation* is a "partnership item," and, if so, whether it is an affected item requiring partner-level determinations. That is, *Nussdorf* did not address the dispositive question presented here.

Second, the petitioners argue that proceedings against them individually will result in duplicative, "Hydra-headed" litigation that TEFRA was intended to eliminate. However, TEFRA's purpose is not to completely eliminate partner-level determinations. Rather, "TEFRA created a single unified procedure for determining the tax treatment of *all partnership items* at the partnership level, rather than separately at the partner level." *In re Crowell*, 305 F.3d 474, 478 (6th Cir. 2002) (emphasis added) (citing H.R. Conf. Rep. No. 97-760, at 599-600, 1982 U.S.C.C.A.N. 1190). By its own terms, TEFRA does *not* apply to "affected items which require partner level determinations." I.R.C. § 6230(a)(2)(A)(i). Therefore, TEFRA explicitly contemplates the necessity of partner-level proceedings in some situations. *Id.* The petitioners' contention that deficiency proceedings are needlessly duplicative essentially restates the threshold question of whether individual proceedings are, in fact, necessary–a question we have already resolved in favor of the Commissioner.

Next, the petitioners characterize the tax court's decision as altering TEFRA's requirements. They claim that the tax court held that it has jurisdiction over deficiency proceedings against individual partners whenever it "may" need to look at partner-level determinations. If correct, this interpretation would amount to a new standard that conflicts with TEFRA's mandate to resolve all issues in a single proceeding against the partnership whenever possible. The tax court did not hold that deficiency proceedings are proper whenever individualized determinations may be necessary. Rather, the tax court held that determining liability *in this case* required partner-level determinations regarding the S corporation's reported loss.

Finally, the petitioners argue that case law from other courts compels a finding that notices of deficiency are unnecessary. *See, e.g.*, *Olson v. United States*, 172 F.3d 1311 (Fed. Cir. 1999); *Bob Hamric Chevrolet, Inc. v. USA, Internal Revenue Service*, 849 F. Supp. 500 (W.D. Tex. 1994); *Bush v. United States*, 78 Fed. Cl. 76 (2007). These cases are procedurally and factually inapposite. Procedurally, none involved the allegedly improper use of deficiency proceedings. Rather, all involved the allegedly improper use of computational adjustments–a procedure not utilized here. The IRS had

assessed liability against the partners in those cases by computational adjustment *without* issuing notices of deficiency.  The use of computational adjustments had the effect of requiring the partners to pay the taxes before disputing them.  The partners then filed refund suits against the government, arguing that notices of deficiency were *required* before any tax could be assessed against them.

By contrast, in petitioners' case the IRS *did* issue notices of deficiency–the very same relief that the petitioners in *Olson*, *Bob Hamric Chevrolet*, and *Bush* requested. In other words, the procedural posture of these cases supports the Commissioner's position.  Furthermore, the cases differ factually from the one before us because the partners had stipulated to the amount of tax credits improperly claimed *before* the IRS assessed their liability via computational adjustment.  Where there is a settlement, the settlement itself resolves factual questions as to each partner.  Here, however, factual questions remain regarding the activities of the S corporation.  We thus find the cases cited by petitioners inapposite.

Because the IRS was authorized to bring deficiency proceedings, and because the petitioners' arguments to the contrary are without merit, we find that the Commissioner's use of deficiency proceedings was proper.

III.

Having determined that the tax court had jurisdiction over the proceedings, we must also decide whether the IRS's disallowance of the petitioners' share of ordinary losses representing fees paid to Jenkens & Gilchrist by the S corporation was time-barred.  The petitioners argue that fees paid by the S corporation are not "partnership items" and therefore not subject to TEFRA's partnership proceedings.  Relying on the statute of limitations governing ordinary deficiency actions, the petitioners contend that any notice of deficiency should have been sent by August 18, 2003, approximately one-and-a-half years before the IRS sent the notices at issue here.  *See* I.R.C. § 6501(a).  The Commissioner responds that the petitioners waived this argument or, in the alternative, that we should not pass on the question in the first instance.

Our review of the record indicates that the petitioners did not waive the limitations issue. The petitioners presented argument on this issue both in their motions to dismiss and in their "protective" motions for summary judgment. The tax court, however, declined to rule on the issue in its August 8, 2007, opinion, reasoning that the statute of limitations is an affirmative defense that does not deprive the court of jurisdiction. The petitioners then filed status reports with the court indicating that they would enter into stipulated decisions with the Commissioner that preserved their right to appeal the two issues they contested, *i.e.*, jurisdiction and limitations. After the petitioners filed their status reports, the Commissioner filed his own status report, which did not dispute that the petitioners had preserved their appellate rights. The petitioners also argued that the disallowance of the ordinary losses was time-barred in their appellate brief. We therefore decline to find that the petitioners waived appellate review of this issue. However, we also decline to resolve the issue in the first instance. *Cf. Bigelow v. Williams*, 367 F.3d 562, 566 (6th Cir. 2004). Rather, we remand to the tax court for determination whether the Jenkens & Gilchrist fees were nonpartnership items subject to the statute of limitations in I.R.C. § 6501(a) or whether they were affected items subject to TEFRA.

## IV.

For the foregoing reasons, we affirm the judgment of the tax court that it had jurisdiction over these proceedings, but we remand for consideration of whether the disallowance of the credit for the Jenkens & Gilchrist fees was time-barred.